# Songwriter's Contract
(INDIVIDUAL COMPOSITION)

AGREEMENT made this __31st__ day of __August__, 19__79__, between
**CECIL WOMACK MUSIC**
(hereinafter called the "Publisher"), and,
**CECIL WOMACK AND GIP NOBLE**
jointly and/or severally (hereinafter called "Writer(s)").

WITNESSETH

In consideration of the agreement herein contained and of the sum of One (1.00) Dollar and other good and valuable consideration in hand paid by the Publisher to the Writer, receipt of which is hereby acknowledged, the parties agree as follows:

1. The Writer hereby sells, assigns, transfers and delivers to the Publisher, its successors and assigns, a certain heretofore unpublished original musical composition(s) (hereinafter called the "Composition") written and/or composed by the above named Writer created (date) __1979__ now entitled: **"LOVE T.K.O."**

including the title, words and music, and all copyrights thereof, including but not limited to the copyright registration thereof No. _____, and all rights, claims and demands in any way relating thereto, and the exclusive right to secure copyright therein throughout the entire world, and to have and to hold the said copyrights and all rights of whatsoever nature now and hereafter thereunder existing and/or existing under any agreements or licenses relating thereto, for and during the full term of said copyright, in consideration of the agreement to pay royalties herein contained and other good and valuable consideration in hand paid by the Publisher to the Writer, receipt of which is hereby acknowledged, the Writer hereby sells, assigns, transfers and delivers to the Publisher, its successors and assigns, the copyright of said musical Composition to which the Writer may be entitled, and all registrations thereof, and all rights of any and every nature now and hereafter existing for the full term of such copyright.

2. The Writer hereby covenants, represents and warrants that the Composition hereby sold is an original work and that neither said work nor any part thereof infringes upon the title or the literary or musical property or the copyright in any other work, and that he is the sole writer and composer and the sole owner thereof and of all the rights therein, and has not sold, assigned, set over, transferred, hypothecated or mortgaged any right, title or interest in or to the said Composition or any part thereof, or any of the rights herein conveyed, and that he has not made or entered into any contract or contracts with any other person, firm or corporation whomsoever, affecting said Composition or any right, title, or interest therein, or in the copyright thereof, and that no person, firm or corporation other than the Writer has or has had claims, or has claimed any right, title or interest in or to said work or any part thereof or any use thereof or any copyright therein, and that said work has never been published, and that the Writer has full right, power and authority to make this present instrument of sale and transfer.

3. In consideration of this agreement, the Publisher agrees to pay the Writer as follows:

   (a) _____ as a non-returnable advance against the royalties payable to Writer hereunder, which sum, and all other advances which may be paid, shall be deductible from payments hereafter becoming due the Writer hereunder or under any other agreement between the parties.

   (b) __Five__ cents per copy, for each and every regular pianoforte copy thereof published and sold by and paid for to the Publisher in the United States and Canada.

   (c) __Five__ cents per copy, for each and every dance orchestration thereof published and sold by and paid for to the Publisher in the United States and Canada.

   (d) __25%__ percent of the wholesale selling price (after trade discounts if any) for each and every printed copy of each and every other arrangement and edition thereof published and sold by and paid for to the Publisher in the United States and Canada, except that in the event that the said work shall be used or caused to be used in whole or in part in conjunction with one or more other musical composition(s) in a folio or album, the Writer shall be entitled to receive the proportion of said __25%__ percent which the Musical Composition shall bear to the total number of musical composition(s) contained in such folio or album.

   (e) FIFTY (50%) percent of any and all net sums actually received by the Publisher from the mechanical rights, electrical transcriptions and reproducing rights, motion picture synchronization and television rights, therein in the United States and Canada, except that the Writer shall not be entitled to share in any sum or sums received by the Publisher from ASCAP or BMI or any public performance rights organization which pays performance fees directly to songwriters.

   (f) FIFTY (50%) percent of any and all net sums actually earned and actually received by the Publisher from sales and uses (other than public performances uses for which Writer is paid by any public performance rights organization) of the musical Composition(s) in countries outside of the United States and Canada.

   (g) The Publisher shall not be required to pay any royalties on professional or complimentary copies which are distributed gratuitously to performing artists or orchestra leaders or for advertising or exploitation purposes.

   (h) The Publisher shall not be required to pay royalties earned by reason of the public performance of the musical Composition; said royalties being payable only by the performing rights society with which Writer is or may in the future become affiliated.

   (i) Except as herein expressly provided, no other royalties shall be paid with respect to the said Composition.

4. It is understood and agreed by and between all the parties hereto that all sums hereunder payable jointly to the Writer shall be paid to and divided respectively as follows:

| NAME | SHARE |
|---|---|
| CECIL WOMACK | 50% |
| GIP NOBLE | 50% |

5. The Publisher shall render to Writer, as above, on or before each September 30th covering the six (6) months ending June 30th, and each March 30th covering the six (6) months ending December 31st, royalty statements accompanied by remittance for any royalties due thereunder. After two (2) years from the date of this agreement, royalty statements shall be rendered solely for periods in which royalties are due. Said statements and payment, in the absence of written objection thereto by the Writer within ninety (90) days from receipt thereof, shall constitute an account stated as to all royalties due for the period encompassed by such statement and/or payment. Royalties are payable only when received by the Publisher in the United States and in dollar equivalent at the rate of exchange at the time Publisher receives payment.

6. The Writer expressly grants and conveys to the Publisher the copyright of the aforesaid Composition and the right to copyright the same, and the right to secure all copyrights and any and all rights therein that the Writer may at any time be entitled to, and agrees to sign any and all other papers which may be required to effectuate this agreement. The Writer does hereby irrevocably authorize and appoint the Publisher, its successors or assigns, and attorneys or representatives in their name or in his name to take and do such actions, deeds and things and make, sign, execute, acknowledge and deliver all such documents as may from time to time be necessary to secure the copyrights and assignments of copyrights in the aforesaid Composition, and to assign to the Publisher, its successors and assigns the copyrights and all rights therein for the term of such Composition and to do, make, execute, acknowledge and to procure the due execution, acknowledgement and delivery to the Publisher, of all papers necessary in order to secure to it the copyrights in said Composition and all rights therein for the full term of the copyright allowed under the current United States copyright law.

7. The Writer hereby consents to such changes, adaptations, dramatizations, transpositions, editing and arrangements of said Composition, and the setting of words to the music and of music to the words, and the change of title as the Publisher deems desirable. In the event that the Composition covered by this agreement is an instrumental composition, then and in such event the Writer hereby irrevocably grants to the Publisher the sole and exclusive right and privilege to cause to have lyrics written for such Composition by a writer or writers designated by the Publisher, which lyrics shall require only the approval of the Publisher, whereupon the Writer shall be entitled to only one half of the aforementioned royalties provided in this agreement. The Writer hereby waives any and all claims which they have or may have against the Publisher and/or its associates, affiliated and subsidiary corporations by reason of the fact that the title of the said Composition may be the same or similar to that of any musical composition or compositions heretofore or hereafter acquired by the Publisher and/or its associated, affiliated and subsidiary corporations. The Writer consents to the use of his (their) name and likeness and the title of the said Composition on the music, folios, recordings performances, players rolls and in connection with publicity and advertising concerning the Publisher, its successors, assigns and licensees and said Composition, and agrees that the use of such name, likeness and title as heretofore mentioned prior to publication and may continue so long as the Publisher(s) own and/or exercise any rights in said Composition.

8. Anything to the contrary notwithstanding, nothing in this agreement contained shall obligate the Publisher to print copies of said Composition or shall prevent the Publisher from authorizing publishers, agents and representatives in countries inside and outside of the United States from exercising exclusive publication and all other rights in said foreign countries in said Composition on the customary royalty basis, it being understood that the percentage of the monies received from foreign sources shall be computed on the Publisher's net receipts, and nothing in this agreement shall prevent the Publisher from exercising exclusive publication rights and other rights in the United States in said Composition, provided the Publisher shall pay the Writer the royalties herein stipulated.

9. The Writer may appoint a certified public accountant who shall, upon written request therefore, have access to all records of the Publisher during business hours relating to said Composition for the purpose of verifying royalty statements hereunder. The rights of Writer pursuant to this paragraph shall be limited to once per year.

10. Any legal action brought by the Publisher against any alleged infringer of said Composition shall be initiated and prosecuted at the Publisher's sole expense, and any recovery made by it as a result thereof, after deduction of the expense of the litigation, a sum equal to thirty-three and one-third (33-1/3%) percent shall be paid to the Writer.

(a) If a claim is presented against the Publisher in respect of said Composition, and because thereof the Publisher is jeopardized, it shall thereupon serve written notice upon the Writer, containing the full details of such claim known to the Publisher and thereafter until the claim has been adjudicated or settled shall hold any moneys coming due the Writer in escrow pending the outcome of such claim or claims. The Publisher shall have the right to settle or otherwise dispose of such claims in any manner as it in its sole discretion may determine. In the event of any recovery against the Publisher, either by way of judgment or settlement, all of the costs, charges, disbursements, attorney fees and the amount of the judgment or settlement, may be deducted by the Publisher from any and all royalties or other payments payable to the Writer by the Publisher or by its associated, affiliated, or subsidiary corporations, pursuant to this agreement or under any other agreement between said parties.

(b) From and after the service of summons in a suit for infringement filed against the Publisher with respect to said Composition, any and all payments thereafter coming due the Writer shall be held by the Publisher in trust until the suit has been adjudicated and then disbursed accordingly.

11. "Writer" as used herein shall be deemed to include all authors and composers signing this agreement.

12. The Publisher shall have the right to sell, assign, transfer, license or otherwise dispose of any of its rights in whole or in part under this agreement to any person, firm or corporation, but said disposition shall not affect the right of the Writer to the royalties hereinabove set forth.

13. This agreement shall be construed only under the laws of the State of California. If any part of this agreement shall be invalid or unenforceable, it shall not affect the validity of the balance of this agreement.

14. This agreement shall be binding upon and shall inure to the benefit of the respective parties hereto, their respective successors in interest, legal representatives and assigns, and represents the entire understanding between the parties.

IN WITNESS WHEREOF, the parties hereto have executed this agreement the day and year first above written.

PUBLISHER
By _____
PUBLISHER (Typed Name) CECIL WOMACK MUSIC
Address 6430 Sunset Blvd., St.1500
City, State Los Angeles, Calif. 90028

WRITER (Typed Name) CECIL WOMACK
Writer Signature _____
Address 10713 Third Avenue
City, State Inglewood, Calif. 90303
Date of Birth _____
Social Security No. 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

WRITER (Typed Name) GIP NOBLE
Writer Signature Gip E Noble Jr
Address 1344 Meadowbrook
City, State LA. CAL 90019
Date of Birth Oct. 6, 1946
Social Security No. 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

WRITER (Typed Name) _____
Writer Signature _____
Address _____
City, State _____
Date of Birth _____
Social Security No. _____

## ASSIGNMENT

For valuable consideration, the undersigned hereby assigns, transfers, sets over and conveys to CECIL WOMACK MUSIC all right, title, and interest in and to that certain musical Composition entitled " LOVE T.K.O. " written and composed by

CECIL WOMACK
GIP NOBLE

including the statutory copyright therein for the entire term of the copyright under the United States Copyright Act of 1976 for the entire world.

SIGNED _____  SIGNED _____
        CECIL WOMACK                      GIP NOBLE

SIGNED _____  SIGNED _____